**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:22-cv-24226-JEM/Becerra

ELENA DVOINIK and
BORIS ZAVADOVSKY,

      Plaintiffs,

v.

MARIO RABL and
SUSANNE HOFLINGER,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS[1]

**THIS CAUSE** came before the Court on Defendants, Mario Rabl ("Rabl") and

Hoflinger's ("Hoflinger," and together with Rabl, collectively, "Defendants"), Motion to Dismiss

Complaint (the "Motion"), ECF No. [20].  Defendants move to dismiss Plaintiffs, Elena Dvoinik

("Dvoinik") and Boris Zavadovsky's ("Zavadovsky," and together with Dvoinik, collectively,

"Plaintiffs"), Complaint, ECF No. [1], for insufficient service of process, lack of subject-matter

jurisdiction, lack of personal jurisdiction, splitting causes of action, and absolute immunity for

official police actions.  *See* ECF No. [20].  Plaintiffs filed a Response to the Motion (the

"Response"), ECF No. [21], and Defendants filed a Reply (the "Reply"), ECF No. [22].

    Upon review of the Motion, the pertinent portions of the record, and being otherwise fully

advised in the premises, it is hereby **RECOMMENDED** that Defendants' Motion, ECF No. [20],

be **GRANTED**, and that Plaintiffs' Complaint, ECF No. [1], be **DISMISSED WITHOUT**

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States
District Court Judge.  ECF No. [7].

**PREJUDICE** as set forth herein.

## I.   BACKGROUND

Plaintiffs in this case allege that Austrian government officials waged a scheme against them, beginning with an unlawful search of Plaintiffs' Austrian home by Austrian police and resulting in the seizure of Plaintiffs' property and data (the "Search and Seizure"). *See* ECF No. [1] at ¶¶ 7, 19; ECF No. [21] at ¶ 15. Defendants are two Austrian police officers who executed the warrant authorizing the Search and Seizure, which was issued based on suspicion of forgery. ECF No. [21] at ¶¶ 3-6, 10, 15. Plaintiffs unsuccessfully challenged the legality of the Search and Seizure in Austrian courts. Order Granting Mot. to Dismiss at 6, *Dvoinik v. Philipp*, No. 8:22-cv-01127-TPB-CPT ("*Dvoinik I*") (M.D. Fla. Mar. 15, 2023), ECF No. [73]. Then, Plaintiffs, proceeding *pro se*, filed five suits in various United States District Courts, all of which pertain to the Search and Seizure.

First, Plaintiffs turned to the Middle District of Florida in May 2022, where they sued Defendants and several other Austrian officials, asserting claims under the "Federal RICO statute . . . and the Ohio Corrupt Practices Act" based on the Search and Seizure. Compl. with Jury Demand at 25, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. May 16, 2022), ECF No. [1]. Plaintiffs' claims in *Dvoinik I* were dismissed without prejudice by the Honorable Judge Thomas P. Barber as running afoul of the Act of State Doctrine. *See* Order Granting Mot. to Dismiss at 11-12, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. Mar. 15, 2023), ECF No. [73]. Then, when Plaintiffs filed an amended complaint, their claims were dismissed with prejudice on the same grounds, which dismissal was affirmed by the Eleventh Circuit Court of Appeals on January 9, 2024. Order Granting Mot. to Dismiss with Prejudice at 3-4, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. June 30, 2023), ECF No. [89]; *Dvoinik I*, No. 23-12240, 2024 WL 95440, at

2

*3-6 (11th Cir. Jan. 9, 2024).

On July 28, 2022, Plaintiffs filed another lawsuit in the Middle District of Florida, this time suing the Republic of Austria for claims such as replevin, conversion, violation of international law, and punitive damages.  Compl. at 13-15, *Dvoinik v. Republic of Austria*, No. 8:22-cv-01700-CEH-SPF ("*Dvoinik II*") (M.D. Fla. July 28, 2022), ECF No. [1].  A Motion to Dismiss their Amended Complaint in that case is currently pending.  Defs.' Mot. to Dismiss Am. Compl.: (1) for Lack of Subject Matter Jurisdiction, (2) Under Act of State Doctrine, and (3) for Failure to State a Claim for Punitive Damages, and Incorporated Mem., *Dvoinik II*, No. 8:22-cv-01700-CEH-SPF (M.D. Fla. Sept. 13, 2023), ECF No. [28].

In March 2023, Plaintiffs filed their third suit in the Middle District of Florida.  Compl., *Dvoinik v. Rolff*, No. 8:23-cv-00623-KKM-CPT ("*Dvoinik III*") (M.D. Fla. Mar. 21, 2023), ECF No. [1].  Directing their attention to Defendants' counsel, Plaintiffs sued Dale F. Webner and his firm, Miller & Webner P.A., as well as Elke U. Rolff and Rolff Law P.A.  *Id.* at ¶¶ 9-12.  Plaintiffs claimed these defendants were "posing as Counsels of Austria and other Defendants, authorized to perform any procedural actions on behalf of their principals," leading to Plaintiffs' disclosure of information and documents "not intended for . . . unauthorized persons."  *Id.* at ¶¶ 63-64.  The Honorable Judge Kathryn Kimball Mizelle dismissed Plaintiffs' first complaint as a shotgun pleading.  Order at 3-4, *Dvoinik III*, No. 8:23-cv-00623-KKM-CPT (M.D. Fla. Mar. 22, 2023), ECF No. [5].  When Plaintiffs filed an amended complaint, it was dismissed with prejudice on the grounds that the statute upon which their claim was founded provided no private cause of action.  Order at 4, 6, *Dvoinik III*, No. 8:23-cv-00623-KKM-CPT (M.D. Fla. May 5, 2023), ECF No. [26].

On May 19, 2023, Plaintiffs filed suit in the Southern District of New York, again against Ms. Rolff and Mr. Webner, alleging these "RICO-actors" had "unlawfully acted on the U.S.

territory serving international RICO Enterprise involved in foreign commerce, committed RICO predicate acts," and harmed Plaintiffs.  Compl. RICO 18 U.S.C. § 1962(c), § 1962(d) at ¶ 2, *Dvoinik v. Rolff*, No. 1:23-cv-04216-LTS ("*Dvoinik IV NY*") (S.D.N.Y. May 19, 2023), ECF No. [1].  *Dvoinik IV NY* was transferred to the Southern District of Florida, where it was assigned to the Honorable United States District Judge Jose E. Martinez.  Transfer Order, *Dvoinik IV NY*, No. 1:23-cv-04216-LTS (S.D.N.Y. May 22, 2023), ECF No. [5]; Compl. RICO 18 U.S.C. § 1962(c), § 1962(d), *Dvoinik v. Rolff*, No. 1:23-cv-22289-JEM ("*Dvoinik IV FL*") (S.D. Fla. June 21, 2023), ECF No. [1].  Judge Martinez dismissed Plaintiffs' complaint as a shotgun pleading, a ruling Plaintiffs have appealed.  Order on Defs.' Mot. to Dismiss at 4-5, *Dvoinik IV FL*, No. 1:23-cv-22289-JEM (S.D. Fla. Nov. 21, 2023), ECF No. [30]; Notice of Appeal to the Eleventh Circuit Ct. of Appeal at 1, *Dvoinik IV FL*, No. 1:23-cv-22289-JEM (S.D. Fla. Dec. 21, 2023), ECF No. [31].

### B.     The Instant Case.

Plaintiffs have now filed their fifth action, the instant three-claim Complaint against Defendants for: (1) defamation; (2) invasion of privacy; and (3) intentional infliction of emotional distress.  ECF No. [1] at 15-16.  All three claims arise from the same set of factual allegations.  *Id.* Plaintiffs contend that after the Search and Seizure was performed, Defendants, in their individual capacity, called and e-mailed several third parties based in the United States and falsely accused Plaintiffs of forgery and fraud.  ECF No. [1] at ¶¶ 10-26, 30-107.  These third parties include: (1) Barnes & Noble Holding, (2) Department of Orthopedic Surgery NYU, (3) 112619 Delaware Acquireco Inc. D/B/A Edward Beiner, (4) Hospital for Joint Diseases, (5) Interfaith Medical Center, (6) Hotel Beacon, (7) Landstuhl Regional Medical Center, (8) Dr. Nathan Hershkowitz, and (9) New York University (collectively, the "Third Parties").  ECF No. [1] at ¶¶ 23, 30-107. The Complaint lists addresses in New York and Germany for each of the Third Parties except for

4

(1) 112619 Delaware Acquireco Inc. D/B/A Edward Beiner; (2) Barnes & Noble Holding, which they say "has a retail presence in every state," including "in Miami-Dade County," although they do not specify which location Defendants allegedly contacted; and (3) New York University, for which no address is listed. *Id.* at 6, 8, 14; *see also id.* at ¶ 12 ("Defendants committed at least 9 episodes of invasion of privacy and defamation in the United States, including one episode [Edward Beiner] directly on the territory of Miami-Dade County.").

Plaintiffs claim Defendants contacted the Third Parties under the premise that they were "conduct[ing] criminal investigations in the United States against 'criminals and swindlers Elena Dvoinik and Boris Zavadovsky.'" *Id.* at ¶ 15. In so doing, Defendants allegedly sought confirmation from the Third Parties that Plaintiffs forged receipts, certificates, and other official documents in order to defraud the Internal Revenue Service, insurance companies, and Plaintiff Zavadovsky's employer, "the US Government." *See id.* at ¶¶ 32-33, 43-45, 52-53, 61-63, 69-71, 78, 80, 84-89, 99-100, 104-05. Some of these invoices, receipts, and certificates appear to have been recovered during the Search and Seizure as suspected counterfeits. *See id.* at ¶¶ 52, 80; ECF No. [21] at 28-34.

According to Plaintiffs, Defendants' statements to the Third Parties "are partly false" for several reasons. ECF No. [1] at ¶ 17. First, although Plaintiffs admit Defendants are Austrian police officers, they say Defendants "have lower police ranks" and "did not have the authority . . . to investigate . . . Plaintiffs . . . in the United States." *Id.* at ¶¶ 17-20. Second, Plaintiffs concede that they "were indeed investigated on suspicion of forgery in Austria," but Plaintiffs argue the investigation was prompted by "false statements of the Defendants and their RICO co-actors." *Id.* at ¶ 19 (footnote omitted). Lastly, Plaintiffs assert that "[t]he Austrian police did not conduct any investigations against the Plaintiffs in the United States," and did not have authority to do so. *Id.*

at ¶¶ 22-23.  With this, they conclude that "[a]ll acts performed by . . . [D]efendants in the United States were carried out solely on their own initiative," with nefarious goals such as intimidating Plaintiffs, destroying their reputation, "depriv[ing] the[m] . . . of the opportunity to . . . seek redress for the crimes of . . . [D]efendants and the RICO Enterprise," and retaliating against the Plaintiffs." *Id.* at ¶¶ 26, 29.  Plaintiffs also aver that a new criminal investigation has been initiated against them in Austria based on Defendants' testimony regarding their unauthorized investigations in the United States.  *See* ECF No. [21] at ¶ 25.

With respect to their defamation claim, Plaintiffs allege that Defendants' false statements "would tend to so harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  ECF No. [1] at ¶ 109. By "transmitting" these false statements, which Defendants knew were false "[a]t the time of transmitting," Defendants caused harm to Plaintiffs, including but not limited reputational harm, embarrassment, and emotional distress.  *Id.* at ¶¶ 109-113.  Plaintiffs further claim these false statements "are defamatory per se because they impute to Plaintiffs the commission of crimes for which [they] . . . could be indicted and punished."  *Id.* at ¶ 112.  Moreover, they "prejudice . . . [Plaintiffs] in their profession as a medical doctor and as a lawyer," and thus, "Plaintiffs . . . are entitled to presumed damages."  *Id.*

In their invasion of privacy claim, Plaintiffs add that not only did Defendants "disclose[] the embarrassing private information about Plaintiffs to" the Third Parties, but they also "disclosed private embarrassing information . . . regarding . . . Zavadovsky's previous marriage . . . ."  *Id.* at ¶ 117.  In particular, Defendants allegedly revealed that (1) Zavadovsky's "former mother-in-law and . . . father-in-law were convicted for forgery in Germany in 2006"; (2) he helped his childhood friend, Andrei Kovnatsky, "escape from the Soviet Union in the early 80s"; and (3) that he was

"subsequent[ly] repress[ed] by the Soviet special services." *Id.*  Plaintiffs say Defendants "have no duty to disclose embarrassing facts," and this "[d]isclosure appears to be an unreasonable public disclosure to another person." *Id.* at ¶¶ 118-19.

Plaintiffs' intentional infliction of emotional distress claim merely incorporates by reference all of "the foregoing paragraphs, and especially 29," which alleges that Defendants, in furtherance of their scheme, pursued goals such as intimidating Plaintiffs, destroying their reputation, and causing the maximum emotional distress to them as possible. *Id.* at 16, ¶ 29.

## II.   THE INSTANT MOTION

### A.  Defendants' Motion to Dismiss.

In the Motion, Defendants set forth several grounds for dismissal of the Complaint. ECF No. [20].  First, Defendants argue the Complaint should be dismissed for insufficient service of process.  *Id.* at 1, 3-4.  Federal Rule of Civil Procedure 4(f), which governs the service of process on individuals in foreign countries, provides in pertinent part that applicable individuals may be served (1) according to any "internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" (the "Convention"); (2) "if there is no internationally agreed means, . . . by a method that is reasonably calculated to give notice," subject to further requirements; or (3) "by other means not prohibited by international agreement, as the court orders."  FED. R. CIV. P. 4(f).  Under the Republic of Austria's reservation to the Convention, "service upon all persons acting on behalf of the Republic of Austria, such as police officers and other State officials, [must be made] through diplomatic channels . . . ."[2] ECF No. [20] at 4.  Defendants argue this reservation

---

[2]  *See also* U.S. Department of State, *Austria Judicial Assistance Country Information*, TRAVEL.STATE.GOV (Mar. 15, 2023), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Austria.html.

controls here, as they are police officers acting on behalf of the Republic of Austria. *Id*. Thus, they claim Plaintiffs' attempts to serve them by e-mail or by serving their counsel are improper. *See id.*

Second, Defendants argue the Complaint should be dismissed pursuant to the "Act of State doctrine" or "conduct-based immunity," because Defendants' alleged actions, if true, would have been performed in the course of their official duties as Austrian police officers. *Id.* at 2, 8–13. Specifically, they say the Act of State Doctrine is a "judicially created rule of decision that 'precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power commits within its own territory'." *Id.* at 9 (citations omitted). Defendants argue this doctrine goes to the question of subject matter jurisdiction and "prevents the courts in the United States from declaring that an official act of a foreign sovereign power performed within its own territory is invalid." *Id.* (citations omitted).

To this end, Defendants contend that *Dvoinik I* and the instant case boil down to the same factual allegations pertaining to a supposed scheme in Austria involving "'the activities of Austrian law enforcement,'" constituting "'quintessential exercises of a state's police power.'" *Id.* at 10 (quoting Order Granting Mot. to Dismiss at 9-10, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. Mar. 15, 2023), ECF No. [73]). Defendants argue that on these facts, the court in *Dvoinik I* dismissed Plaintiffs' complaint with prejudice on Act of State grounds, a ruling that has since been affirmed by the Eleventh Circuit. Order Granting Mot. to Dismiss at 11-12, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. Mar. 15, 2023), ECF No. [73]; Order Granting Mot. to Dismiss with Prejudice at 1-4, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. June 30, 2023), ECF No. [89]; *Dvoinik I*, No. 23-12240, 2024 WL 95440, at *3-6 (11th Cir. Jan. 9, 2024). For these same reasons, Defendants argue they are covered by "conduct-based immunity," a doctrine that

bars actions against public officials of a foreign state based on acts performed in their official capacity if "exercising jurisdiction would serve to enforce a rule of law against [the] foreign state." *Id.* at 11 (citing *Aldosarri v. Ripp*, 327 F. Supp. 3d 828 (E.D. Pa. 2021)).

Third, Defendants argue this Court lacks personal jurisdiction over them.  ECF No. [21] at 13-15.  Defendants contend that Plaintiffs' allegations regarding personal jurisdiction hinge upon Defendants' commission of a tortious act in Florida, pursuant to Florida's long-arm statute.  *Id.* at 13-14.  According to the Complaint, this is satisfied by Defendants' contacts with the Third Parties, which amounted to defamation, invasion of privacy, and intentional infliction of emotional distress.  ECF No. [1] at ¶¶ 6, 10-12.  However, each Defendant submitted an affidavit (the "Affidavits") swearing that (1) they have no, and never had any, contacts with the State of Florida; (2) they had no contact with the Third Parties, in Florida or elsewhere; and (3) any alleged contact with the Third Parties was done pursuant to a request for mutual international police assistance submitted by Austria.  ECF Nos. [20-2]; [20-3].  Having submitted affidavits negating the foundation for personal jurisdiction in the Complaint, Defendants argue that Plaintiffs now bear the burden of proffering "direct evidence" supporting personal jurisdiction, or else their claims should be dismissed.  ECF No. [20] at 13-15.

Fourth, Defendants argue that this action is barred by the claim-splitting doctrine and *res judicata*,[3] because this case and *Dvoinik I* "involve the same parties" (Dvoinik, Zavadovsky, Rabl, and Hoflinger) and "involve the same facts" (the Search and Seizure and subsequent investigation of Plaintiffs by Austrian officials).  *Id.* at 2, 15-17.  Defendants contend that by filing (1) *Dvoinik I* for violations of the "Federal RICO statute . . . and the Ohio Corrupt Practices Act"; and (2) the instant case for defamation, invasion of privacy, and intentional infliction of emotional distress,

---

[3] Defendants do not present any argument as to how *res judiciata* bars the claims in this case.

Plaintiffs are improperly splitting causes of action, arising from the same nucleus of operative facts, into two (or five) different cases.  *Id.* at 15-17; *see* Compl. with Jury Demand at 25, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. May 16, 2022), ECF No. [1].

Finally, Defendants argue that they enjoy absolute immunity with respect to the defamation claim because any statements they allegedly made were made in their official capacity as police officers performing their official duties.  ECF No. [20] at 3, 17-20.  Thus, even if Plaintiffs' allegations are accepted as true, the Complaint should nevertheless be dismissed because "public officials who make statements within the scope of their duties are absolutely immune from suit for defamation under Florida law." *Id.* at 18 (emphasis omitted).  Moreover, Defendants say Plaintiffs "cannot avoid the privilege by simply calling the alleged defamation something else, like intentional infliction of emotional distress or invasion of privacy as in this case." *Id.* at 19. (citing *Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992)).

**B.  Plaintiffs' Response.**

Plaintiffs' Response only addresses lack of personal jurisdiction, insufficient service of process, and claim-splitting.  *See* ECF No. [21].  As to personal jurisdiction, Plaintiffs repeat the allegations of the Complaint, stating that this Court has personal jurisdiction because "the[ir] causes of action . . . arise from Defendants transacting business in Florida . . . and causing tortious injury by the acts or omissions in Florida." *Id.* at ¶ 34.  Plaintiffs point out that some of the Third Parties maintain locations in Florida, although, as noted, the Complaint lists addresses in New York or Germany for all but three of the entities. *Id.* at ¶ 35; ECF No. [1] at 6-14.  Next, Plaintiffs attach to their Response what appears to be an Austrian police report titled, "Interim report" (the "Interim Report"), which discusses Plaintiffs' suspected forgery of specially protected documents and summarizes the results of "[t]he investigations into the documents" with each of the Third

Parties.  *See* ECF No. [21] at 28-39.  Defendant Rabl is listed as "Editor" of the Interim Report, and the header reads, "Assigned to: RABL Mario."  *Id.* at 28, 34.  Presumably, the Interim Report is presented as proof that Defendant Rabl made the alleged contacts outlined in the Complaint.

Plaintiffs go on to assert that "the testimony of the Defendants, set out in their Affidavits, is deliberat[e]ly false," because in response to complaints submitted by Plaintiffs to the Austrian Data Protection Committee, the Austrian Police reported that it did not transfer Plaintiffs' personal data to the authorities of any foreign country or contact foreign law enforcement authorities on issues concerning Plaintiffs.  *Id.* at ¶¶ 32-33.  Plaintiffs do not attach the documents issued by the Austrian police to support this statement.

Plaintiffs claim that "[i]f the Defendants do not lie in their" Affidavits, they prove that they "sent forgeries of their own to the John Dou US Agency, with an intent to . . . prosecute the Plaintiffs in the United States for crimes that the Plaintiffs did not commit."  *Id.* at ¶ 16.  Plaintiffs state that they "have all the records of the criminal investigation conducted against them by the Austrian police in chain of custody" and "swear under oath that there is NO ANY EVIDENCE IN THE FILES THAT THE AUSTRIAN POLICE HAVE CARRIED OUT ANY INVESTIGATIONS REGARDING THEIR ACTIVITIES IN THE US, INCLUDING ON THE TERRITORY OF THE US."  *Id.* at ¶¶ 16-17.  They add that no Austrian authority has "approached the Austrian Central Authority . . . with a request for assistance in criminal investigations against Plaintiffs outside of Austria, as required by law . . . ."  *Id.* at ¶ 19.  Thus, they conclude that Defendants made the contacts alleged in the Complaint in their own capacity.  *Id.* at ¶¶ 21, 29.

With respect to service of process, Plaintiffs claim that Defendants were served by email, and through their counsel, and each "confirmed this."  *Id.* at ¶ 31.  Plaintiffs do not attach proof of this confirmation.  Plaintiffs add that they do not need to serve Defendants through diplomatic

channels because Defendants' actions against Plaintiffs "were committed in the USA, [and] were not related to their employment in the Lower Austrian police." *Id.* at ¶¶ 29-30. Again, they base this on the premise that the Austrian police did not, directly or indirectly, investigate Plaintiffs in the United States, and thus, Defendants must have done so off duty. *Id.* Finally, Plaintiffs aver that "the US Department of Justice does not notify individuals through diplomatic channels at all." *Id.* at ¶ 30. No authority is provided for either assertion.

Finally, as to claim splitting, Plaintiffs "ask the Court to take into account the fact that they are unable to pay for the services of a professional US lawyer in connection with the financial difficult situation that arose through the fault of the Defendants." *Id.* at ¶ 36. However, to "avoid errors and misunderstandings," Plaintiffs "move to dismiss" their invasion of privacy and intentional infliction of emotional distress claims. *Id.* (emphasis omitted). They also argue that they "do not bring any claims against . . . Defendants for Counts I-IX of the Complaint . . . in any related cases and do not intend to do so." *Id.* The referenced "counts" set forth Defendants' alleged contacts with each of the Third Parties. ECF No. [1] at 6-14.

### C. Defendants' Reply.

In Reply, Defendants first note that they do not object to Plaintiffs' voluntary dismissal of their invasion of privacy and intentional infliction of emotional distress claims. ECF No. [22] at 1. As such, the undersigned regards these claims as voluntarily dismissed, leaving only the defamation claim asserted in the Complaint. ECF No. [1] at 15-16.

As to their claim splitting argument, Defendants argue that Plaintiffs do not deny the common factual basis between this case and *Dvoinik I*, and Plaintiffs' inability to pay for an American lawyer seems to be an "excuse for why they improperly filed two cases involving the same facts." *Id.* at 1-2. According to Defendants, "[t]his issue transcends all other issues[,] . . .

because Plaintiffs are not entitled to try to find another court, who might give them relief under the exact same facts, by just calling it something else." *Id.* at 2.

As to personal jurisdiction, Defendants argue that Plaintiffs were required to present evidence supporting jurisdiction in order to rebut the Affidavits, but instead, "Plaintiffs simply reiterate[d] the allegations of their Complaint, which are not only insufficient, but also contrary to" case law. *Id.* at 3. Even though Plaintiffs issued subpoenas to each of the Third Parties in *Dvoinik I*, they have offered nothing to show that Defendants contacted these entities or committed any act in Florida whatsoever. *Id.* at 3, 5. Defendants also argue that to the extent the Interim Report is presented to prove personal jurisdiction, it is inadequate, as it does not "say that Rabl made the contacts, but only that he is reporting the results of those contacts." *Id.* at 5.

Finally, Defendants argue that Plaintiffs' attempt to anchor personal jurisdiction over Defendants to the allegation that some of the Third Parties happen to maintain some Florida locations, "even if the alleged contacts [giving rise to personal jurisdiction] occurred out of Florida," is misplaced. *Id.* at 6. Defendants argue that jurisdiction is not based on where the Third Parties have offices, it is based on the contacts the Defendants had in Florida, contacts which were negated by the Affidavits. *Id.* Thus, with no competent proof or affidavits submitted by Plaintiffs, Defendants claim their Affidavits refute the Complaint's jurisdictional allegations by establishing that they had no contact with the state of Florida, and that any investigative contacts in Florida were performed through U.S. authorities via international letters rogatory. *Id.* at 3.

With respect to the Act of State Doctrine, Defendants say Plaintiffs' Response "confirms unequivocally that everything Defendants did was in the performance of their police duties . . . ." *Id.* at 4. For example, the Interim Report and other documents attached to the Response ostensibly outline the *Austrian Police's* official investigation of Plaintiffs, including as it relates to the Third

Parties.  *Id.*  at 4.  Defendants argue that further support is provided by "Plaintiffs' repeated references . . . about Defendants being part of the RICO conspiracy with all the other police, prosecutorial, and judicial Defendants in the related cases . . . ."  *Id.*  Finally, "Defendants' Affidavits that whatever was done was police work remain unrebutted."  *Id.*  Defendants say the foregoing points apply with equal force to their absolute privilege argument, which Plaintiffs did not address in their Response.  *Id.* at 6.  In sum, Defendants argue it is insufficient for Plaintiffs to insist, with no proof, that Defendants made the alleged contacts while off duty.  *Id.* at 4-5. However, Defendants "welcome the Court's allowance or instruction for jurisdictional discovery from the alleged Florida and other contacts" if the Court "wants more in addition to Defendants' unrebutted Affidavits."  *Id.* at 6 (emphasis omitted).

Lastly, on the topic of service of process, Defendants restate their earlier argument that the means of service attempted by Plaintiffs "do not comport with Rule 4(f), which describes the means to serve foreign [individuals]."  *Id.* at 7.  Defendants say subsections (2) and (3) of Rule 4(f) do not apply here, because "those means are in fact 'prohibited by' Austrian law . . . [and] 'prohibited by international agreement', and in any event there is no court order permitting the service."  *Id.*  On the other hand, Defendants argue service by diplomatic channels is not only required in this case, but it also "serves the purpose of assuring diplomatic awareness, protocol, and communications regarding suits against foreign states to maintain international relations . . . ."  *Id.* (citations omitted).

## III.    LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure only requires a short and plain statement of the claim, and as such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

14

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading is facially plausible when it states enough facts for the court to draw a "reasonable inference" that the defendant is liable for the alleged conduct. *Id.* at 678.  The factual allegations must provide more than a "sheer possibility."  *Id.*  When reviewing a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded factual allegations as true.  *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1218 n.2 (11th Cir. 2016) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012)).  However, a court need not accept legal conclusions as true.  *Iqbal*, 556 U.S. at 678.

"A court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).  To determine if personal jurisdiction exists,

> "[a] federal court sitting in diversity undertakes a two-step inquiry . . . : the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."[4]

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  In evaluating the "reach of the Florida long-arm statute," federal courts "are required to construe [Florida law] as would the Florida Supreme Court."  *Madara v. Hall*, 916 F.2d 1510, 1515 (11th Cir. 1990).  "Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of [Florida's] intermediate courts."  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citing *Polskie Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 970 (11th Cir. 1986)).

---

[4] Because Plaintiffs have not established that Defendants are subject to this Court's exercise of personal jurisdiction under Florida's long-arm statute, the undersigned does not reach the second step of this inquiry.

## IV.     ANALYSIS

Although Defendants raise numerous grounds that warrant dismissal, the absence of personal jurisdiction is plain and provides sufficient grounds to warrant dismissal of the entire action.  Plaintiffs allege that Defendants contacted various Third Parties in the United States, and that those contacts, allegedly to confirm fraudulent transactions, defamed or otherwise harmed them in this state.  *See* ECF No. [1] at ¶¶ 6, 10-12.  There is no allegation whatsoever that Defendants were ever in Florida for this or any other purpose.  Based on the foregoing, Plaintiffs argue that the Court can exercise "specific personal jurisdiction over Defendants under Florida's long-arm statute . . . because . . . the[ir] causes of action . . . arise from Defendants transacting business in this [State] (unlicensed private detective activities) and causing tortious injury by the acts or omission in this [State]."  *Id.* at ¶¶ 6, 10-12, 14.

Although not properly cited by Plaintiffs, Florida's long-arm statute provides that:

A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2.  Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(1); (1)(a)(2).  In this context, the term "arising from" contemplates "direct affiliation, nexus, or substantial connection . . . between the basis for the plaintiffs' cause of action and the defendants' . . . activity in the state" which brings them within the ambit of the statute. *Nw. Aircraft Cap. Corp. v. Stewart*, 842 So. 2d 190, 194 (Fla. 5th DCA 2003).

Generally speaking, "the existence of an injury within Florida, standing alone, is insufficient to support jurisdiction over an out-of-state tortfeasor." *Kountze v. Kountze*, 996 So.

2d 246, 252 (Fla. 2d DCA 2008) (en banc). "In order to establish that a defendant is 'carrying on business' for the purposes of [subsection 1 of] the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). To this end, courts consider "the presence and operation of an office in Florida, . . . the possession and maintenance of a license to do business in Florida, . . . the number of Florida clients served, . . . and the percentage of overall revenue gleaned from Florida clients . . . ." *Horizon Aggressive Growth, L.P. v. Rostein-Kass P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). (internal citations omitted). "Electronic communications from out-of-state offices into Florida do not establish [that a defendant is] *conducting business* in Florida." *Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 556 (Fla. 2d DCA 2017) (emphasis added) (citing *Horizon*, 421 F.3d at 1167; *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1322 (S.D. Fla. 2009); and *Jasper v. Zara*, 595 So. 2d 1075, 1075 (Fla. 2d DCA 1992)).

However, "[a] nonresident defendant can commit a *tortious act* in Florida under the long-arm statute by making written, telephonic, or electronic communications into Florida, if the cause of action alleged arises from those communications." *Id.* at 554 (emphasis added). This rule comes into play when the tort alleged "involves some sort of communication directed into Florida for the purpose of fraud, slander, or other intentional tort." *Wiggins v. Tigrent, Inc.*, 147 So. 3d 76, 86 (Fla. 2d DCA 2014). Notably, the "tort of defamation is committed in the place where it is published." *Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So. 2d 854, 857 (Fla. 3d DCA 2007). "A telephonic, electronic, or written communication is deemed 'published' in Florida, subjecting the publisher to [Florida's] long-arm jurisdiction . . . [,] if the communication was made

into this state by a person outside the state, even if that person has no other contacts with the state." *Id.* (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1258 (Fla. 2002)).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United*, 556 F.3d at 1274 (citing *Posner*, 178 F.3d at 1214; and *Polskie*, 795 F.2d at 972). If the defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Id.* (quoting *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (additional citations omitted). Affidavits disputing personal jurisdiction must do more than "den[ying] in a conclusory way any . . . actions that would bring [the defendant] within the ambit of Florida's long-arm statute." *Posner*, 178 F.3d at 1215. Nor is it sufficient for the defendant to summarily declare that the long-arm statute does not apply to them. *Id.* Rather, to "trigger a duty for [p]laintiffs to respond with evidence . . . supporting jurisdiction," the affidavits must "set forth specific factual declarations within the affiant's personal knowledge." *Id.*

Likewise, to rebut an affidavit which disputes the proper exercise of personal jurisdiction, a plaintiff cannot "merely reiterate the factual allegations in the complaint" to meet its burden. *Bloom v. A.H. Pond Co.*, 519 F. Supp. 1162, 1168 (S.D. Fla. 1981) (citing *Electro Eng'g Products Co. v. Lewis*, 352 So. 2d 862 (Fla. 1977); and *Compania Anonima Simantob v. Bank of Am. Int'l*, 373 So. 2d 68 (Fla. 3d DCA 1979)). More precisely, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint *by affidavits* or *other competent proof* . . . ." *Id.* (emphasis added).

Here, the Court can quickly dispose of any contention that Defendants are subject to this Court's personal jurisdiction under Florida's long-arm statute by virtue of "[o]perating,

18

conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1).  Plaintiffs claim Defendants conducted "unlicensed private detective activities" in Florida by contacting the Third Parties regarding Plaintiffs' allegedly fraudulent activity, but they do not allege Defendants engaged in "a general course of business activity in the state for pecuniary benefit."  *See* ECF No. [1] at ¶ 6; *Future Tech.*, 218 F.3d at 1249.  There is no information within the four corners of the Complaint that suggests that Defendants had an office in Florida, served clients in Florida, or generated revenue from Florida clients.  *Horizon*, 421 F.3d at 1167.

In determining whether a tortious act was committed within Florida, what appears to be the only basis for the exercise of personal jurisdiction over Defendants, the undersigned again notes that the Complaint lists addresses in New York and Germany for all but three of the Third Parties when describing the alleged contacts giving rise to personal jurisdiction.  ECF No. [1] at 6, 8; *see also id.* at ¶ 12.  No address is provided for New York University.  *Id.* at 14.  With respect to the other two, Plaintiffs say 112619 Delaware Acquireco Inc. D/B/A Edward Beiner is located in Miami, Florida, and Barnes and Noble Holding has a retail presence all over the United States, including Miami-Dade County (the "Florida Parties").  *Id.* at ¶¶ 31, 50.  Plaintiffs do not identify which Barnes and Noble Holding location the Defendants allegedly contacted.  *Id.* at 6.  Given these factual allegations, even when liberally construed,[5] only the alleged contacts with the Florida Parties can be taken into account for purposes of the referenced provisions of the long-arm statute, because contact with out-of-state entities does not constitute conduct within "this state."[6]  *Id.* at 6-

---

[5] *See Walters v. Sec'y, Fla. Dep't of Corr.*, 743 F. App'x 401, 401 (11th Cir. 2018) ("[P]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed").

[6] Plaintiffs do not contend that this Court has general personal jurisdiction over Defendants.  *See generally* ECF No. [1].

14; *see also Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. 2d DCA 2016) ("A complaint is not legally sufficient to allege personal jurisdiction based on tortious acts when the complaint fails to allege that the acts were committed within Florida.").

Focusing on the Florida Parties, Plaintiffs allege that Defendants committed a tortious act in Florida by making false and defamatory statements about the Plaintiffs to entities located in Florida. *See* ECF No. [1] at ¶¶ 6, 31, 50. Moreover, their cause of action for defamation arises out of the alleged communications directed into the State of Florida. *See id.* at ¶¶ 108-114. With these allegations, the burden shifted to Defendants to present affidavits contradicting the basis of personal jurisdiction.

Defendants have amply met their burden. In their sworn Affidavits, Defendants state that not only have they "never been to the State of Florida," but they have "never been to the United States" and "have no and never have had any business or commercial contacts of any type with Florida or anywhere else in the United States." ECF Nos. [20-2] at ¶¶ 3-4, 9; [20-3] at ¶¶ 3-4, 9. Defendants assert "[t]he allegations of the Complaint about alleged contacts [they] had with various . . . Florida persons and entities about Plaintiffs are false," and proceed to specifically deny transmitting any information about Plaintiffs to any third parties in the United States. ECF Nos. [20-2] at ¶ 7(a)-(b); [20-3] at ¶ 7 (a)-(b). Defendants also explicitly deny conducting private detective activities or transacting any business in the State of Florida. ECF Nos. [20-2] at ¶ 7(b); [20-3] at ¶ 7(b). Likewise, Defendants attest they "did NOT[,] alone or in complicity with [each other,] . . . contact via cell phone, other phone, email, or by any other means[,] nor send anything pertaining to Plaintiffs to," any of the Third Parties "in Miami-Dade County or any other location." ECF Nos. [20-2] at ¶ 7; [20-3] at ¶ 7. Rather, they say the "[c]ontacts with any of the [Third-Parties] alleged by Plaintiffs in Counts I to IX of the Complaint were performed by a U.S. agency

20

on the basis of a request for mutual international police assistance submitted by the competent Austrian authority."  ECF Nos. [20-2] at ¶ 8; [20-3] at ¶ 8.

Defendants offer more than mere "conclusory denials" that they took any action that would subject them to Florida's long-arm statute.  *United*, 556 F.3d at 1276 (citing *Posner*, 178 F.3d at 1215).  The Affidavits contain "specific factual denials that challenge each and every factual allegation raised by [Plaintiffs] regarding [Defendants'] conduct in Florida in connection with" Plaintiffs' defamation claim, including the notion that Defendants contacted any of the Third Parties in Florida or in any other state.  *Id.* at 1277.  In other words, the Affidavits do not only undermine the Complaint's legal conclusions as it pertains to personal jurisdiction but also their factual underpinnings.  Indeed, Defendants take it one step further, explaining that the true source of any alleged contacts was a United States agency.  ECF Nos. [20-2] at ¶ 8; [20-3] at ¶ 8.  These "specific factual declarations" are within Defendants' personal knowledge because they know, in their individual capacity, what communications they did or did not make, and would know, in their roles as Austrian police officers, about the mechanisms of the investigation of the Plaintiffs. *United*, 556 F.3d at 1277.

This Court finds that the Affidavits adequately contradict the Complaint's personal jurisdiction allegations.  As such, the burden now shifts to Plaintiffs to present competent evidence to support jurisdiction.  *See id.* (citing *Posner*, 178 F.2d at 1215) (finding that an affidavit with "specific factual denials" within the affiant's personal knowledge that challenge a complaint's factual allegations regarding a defendant's conduct in Florida are sufficient to shift the burden of supporting jurisdiction to the plaintiff).  To that end, Plaintiffs have "proffered no competent evidence to establish jurisdiction in opposition to the [Affidavits'] denials of the[ir] jurisdictional allegations . . . ."  *Id.* at 1280.  The pertinent portions of their Response only parrot the skeletal

allegations of the Complaint and offer no new information, much less competent proof, to justify this Court's exercise of personal jurisdiction over Defendants.[7]  ECF NO. [21] at ¶ 34.  By all accounts, Plaintiffs "have all the records of the criminal investigation conducted against them by the Austrian police in chain of custody" and have issued subpoenas duces tecum to each of the Third Parties in *Dvoinik I*, including the Florida Parties.  *See* ECF Nos. [20-6]; [21] at ¶ 16; [22] at 5.  Yet Plaintiffs have submitted nothing to indicate that Defendants made the contacts alleged in the Complaint.  They only state, with no support, that the Affidavits are "deliberately false" because the Austrian police reported that it did not transfer Plaintiffs' personal data to, or communicate about Plaintiffs with, any foreign authorities.  ECF No. [21] at ¶¶ 32-33.

Plaintiffs attempt to build on this unsubstantiated premise, arguing that Defendants must have communicated with the Third Parties, and that those communications must have been made while they were off duty.  *Id.* at ¶¶ 21, 29.  The unsworn and unsupported allegations in the Response are insufficient to merit the exercise of personal jurisdiction under the governing law set forth herein.  *See, e.g.*, *Rautenberg*, 193 So. 3d at 928-929 (explaining that "[i]f the defendant's affidavit fully disputes the jurisdictional allegations, then the burden shifts back to the plaintiff to prove by *affidavit* or *other sworn proof* that there is a basis for long-arm jurisdiction") (emphasis

---

[7] Plaintiffs appear to make additional arguments regarding the Motion, burying them within subsequent motions and filings titled as "Notices," to which Defendants have responded.  *See, e.g.*, ECF Nos. [46] to [48], [52] to [58], [61].  Because this Court did not grant the Parties leave to file supplemental briefing on the Motion, and because these filings do not constitute Notices of Supplemental Authority under the Local Rules, they will not be considered herein.  *See, e.g.*, S.D. Fla. L.R. 7.1(c)(1).  Nevertheless, even if the undersigned was inclined to entertain these filings in relation to the Motion, they would not alter the recommendation set forth in Section V, as they contain no competent evidence supporting personal jurisdiction.  On the contrary, certain documents proffered by Defendants seemingly corroborate the sworn statements in their Affidavits that any contacts with the Third Parties as alleged in the Complaint were made by the United States Secret Service at the request of the Austrian police.  *See* ECF Nos. [57] at 4; [57-1]; [57-2]; [57-3]; [61] at 2; [61-1]; [61-2].

added); *see also Walt Disney Co. v. Nelson*, 677 So. 2d 400, 403 (Fla. 5ᵗʰ DCA 1996) (finding that a plaintiff "failed to meet her burden," and reversing the lower court's denial of a motion to dismiss, where the plaintiff presented no affidavit in opposition to defendant's affidavit contradicting the basis for personal jurisdiction under Florida's long-arm statute); *Archdiocese of Detroit v. Green*, 899 So. 2d 322, 325-26 (Fla. 3d DCA 2004) (finding, on appeal of a trial court's denial of a motion to dismiss for lack of personal jurisdiction, that "there [was] no basis for the plaintiff's assertion that the [defendant] . . . committed a tort in Florida" where the defendant submitted an affidavit challenging jurisdiction, and plaintiff "chose not to controvert . . . [the] affidavit, so [the affidavit's] factual assertions [were] treated as true for purposes of [the] proceeding").

Instead of affidavits, Plaintiffs' Response simply incorporates reports and a search warrant, translated from German into English, which appear to detail the results of the investigation of Plaintiffs in Austria.  ECF No. [21] at 14-39.[8]  Assuming, without deciding, that these documents are authentic, that the allegations within them are true, and that they can be considered to support a finding of personal jurisdiction,[9] they nevertheless fall short of satisfying Plaintiffs' burden. Nothing within these documents substantiates the assertion that Defendants contacted the Florida Parties, performed private detective work, or conducted any activity whatsoever in Florida.  On the contrary, they are wholly consistent with Defendants' claim that "[c]ontacts with any of the

---

[8]  Plaintiffs also attach to their Response what appears to be an email from Edward Beiner confirming an appointment for Zavadovsky with a Dr. Kristen Firestone on June 6, 2019.  Plaintiffs do not set forth how or why this exhibit figures into the question of personal jurisdiction.

[9]  *See United*, 556 F.3d at 1278 (affirming a district court's decision to decline to consider inadmissible hearsay submitted by the plaintiff in support of the court's exercise of personal jurisdiction over a nonresident defendant, who submitted affidavits negating the complaint's jurisdictional allegations).

[Third-Parties] alleged by Plaintiffs in Counts I to IX of the Complaint were performed by a U.S. agency on the basis of a request for mutual international police assistance submitted by the competent Austrian authority."  ECF Nos. [20-2] at ¶ 8; [20-3] at ¶ 8.

The Interim Report is of particular interest. ECF No. [21] at 28-39.  As noted above, this document details "the . . . current state of investigation" by the Austrian Police as it pertains to suspicion of forgery of specially protected documents by Plaintiffs.  *Id.* at 28.  The Interim Report lists "counterfeits of invoices and documents" that were "produce[d]" by Plaintiffs, including invoices and certificates from some of the Third Parties.  *Id.* at 31-33.  The Interim Report goes on to summarize the results of "[t]he investigations into the documents" with each of the Third Parties. *Id.* at 32-33.  Defendant Rabl is listed as "Editor" of the Interim Report.  *Id.* at 34.  Although the header reads, "Assigned to: RABL Mario," *Id.* at 28, Rabl stated, in a sworn affidavit submitted to the Middle District of Florida in *Dvoinik I*, that:

> "The [Interim] Report was prepared by me as a police officer in Austria, but . . . it was not based on any investigation conducted by me[,] nor does the [Interim] Report say that I conducted the investigation in the U.S.; instead I am simply reporting information that was either contained in the documents recovered in the search of Plaintiffs' house in Austria or information that we received from the U.S. Agency involved with the mutual international police assistance discussed . . . above."

Aff. of Def. Mario Rabl in Supp. of Mot. to Dismiss at ¶ 9, *Dvoinik I*, No. 8:22-cv-01127-TPB-CPT (M.D. Fla. Apr. 24, 2023).  Even without this clarification, however, the Interim Report, on its face, does *not* demonstrate that either Defendant contacted any of the Third Parties or took any action in Florida.  As noted above, nothing within the unauthenticated exhibits to the Response refutes the detailed factual denials in the Affidavits of the stated grounds for exercising personal jurisdiction over Defendants.  *See Highland Stucco & Lime Products, Inc. v. Onorato*, 259 So. 3d 944, 949, 951 (Fla. 3d DCA 2018) (reversing a trial court's order denying a non-resident

defendant's motion to dismiss for lack of personal jurisdiction where the defendant submitted "a very detailed affidavit" challenging personal jurisdiction and the defendant only submitted an unauthenticated advertisement, an unauthenticated article, and testimony given by the defendant's president in another case which did not refute the affidavit presented by defendant).  Moreover, the reports only serve to bolster Defendants' claim that any alleged contacts with the Third Parties were made by a United States agency, at the Republic of Austria's request, taking this case far outside the reach of the cited provisions of Florida's long-arm statute.  *See* ECF Nos. [20-2] at ¶ 8; [20-3] at ¶ 8.

Having failed to rebut, with affidavits or other competent evidence, Defendants' sworn and specific denial of the Complaint's allegations as it pertains to personal jurisdiction, Plaintiffs leave the Court with no basis to conclude that it can properly exercise personal jurisdiction over the Defendants, or that it is empowered to "take further action."  *Posner*, 178 F.3d at 1214 n.6; *see also Walt Disney Co.*, 677 So. 2d at 403; *Archdiocese of Detroit*, 899 So. 2d at 325-26.  As such, Plaintiffs' Complaint should be dismissed for lack of personal jurisdiction, without prejudice to their refiling in the proper forum.  *See Posner*, 178 F.3d at 1221 (finding that a dismissal without prejudice for lack of personal jurisdiction under the Florida long-arm statute would "not preclude further litigation of these claims on the merits, but it [would] preclude that litigation from occurring in Florida").

## V.   RECOMMENDATION

Accordingly, the undersigned hereby **RECOMMENDS** that the Motion, ECF No. [20], be **GRANTED**, and that Plaintiffs' Complaint be **DISMISSED WITHOUT PREJUDICE**, rendering all pending motions **MOOT**.

## VI.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a de novo determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on January 30, 2024.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**